Filed 10/29/14

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| GREG ROSOLOWSKI et al. | B250951 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. BC499041) |
| v. | |
| GUTHY-RENKER LLC, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, William F. Highberger, Judge. Affirmed.

Law Offices of Morse Mehrban and Morse Mehrban for Plaintiffs and Appellants.

Young, Zinn & Bate, Harry A. Zinn, Stephanie M. Saito; Harrington, Ocko & Monk and John T.A. Rosenthal for Defendant and Respondent.

————————————

Plaintiffs and appellants Greg Rosolowski et al. (collectively, Plaintiffs)[1] appeal a judgment of dismissal following an order sustaining a demurrer interposed by defendant and respondent Guthy-Renker LLC (Guthy) to Rosolowski's first amended complaint without leave to amend.

The advent of electronic mail, or email, "has brought with it a flood of commercial advertising, some of it misleading, false, or deceptive, some even fraudulent, much of it unwanted.  That in turn has given rise to federal and state legal initiatives intended to stem the flow of the unwanted, and especially the misleading, false, deceptive, and fraudulent e-mails, so-called anti-spam legislation." (*Beyond Systems, Inc. v. Kraft Foods, Inc.* (2013) 972 F.Supp.2d 748, 751 (*Beyond Systems*).)

Here, the essential issue presented is whether Plaintiffs stated a cause of action for violation of Business and Professions Code section 17529.5, [2] on the theory that Guthy

---

[1]     In addition to Greg Rosolowski, the plaintiffs and appellants are:  Mark Rosolowski, Francisco Duarte, Herbert Henry, Shawn Monroe, Cindy Rodman, Jennifer Rodman, Miriah Rodman, Mary Ramirez, Blanca Ayala, Jose Estrada, Alfredo Garcia, Sr., Jimmy Jaramillo, Mark Lewis, Irelia Marquez, Luis Marquez, Heriberto Parada, Luis Alberto Perez, Victor Saucedo, Nina Zamora, Georgia Anderson, Erlinda Salonga, Michelle Balansag, Angel Estrada, Celia Ruiz, Alfredo Garcia, Jr., Amy Palomino, Shontae Dunn, Mark Bates, Brian Anderson, Rustom Aparente, Jr., Gwen Aparente, Nadine Balansag, Roxanne Balansag, Jeremy Balansag, Franz Balansag, Terresa Leslie, Shaun Leslie, Miguel Martinez, Jessica Lindsay, John Lindsay, Esperanza Matienzo, Michael Matienzo, Barbara Matienzo, Julie Westfall and Matt Boyster.

[2]     Business and Professions Code section 17529.5 states in relevant part at subdivision (a):  "It is unlawful for any person or entity to advertise in a commercial e-mail advertisement either sent from California or sent to a California electronic mail address under any of the following circumstances:  [¶]  (1)  . . . [¶]  (2) *The e-mail advertisement contains or is accompanied by falsified, misrepresented, or forged header information.*  This paragraph does not apply to truthful information used by a third party who has been lawfully authorized by the advertiser to use that information.  [¶]  (3) The e-mail advertisement *has a subject line* that a person knows would be likely to mislead a recipient, acting reasonably under the circumstances, about a material fact regarding the contents or subject matter of the message."  (Italics added.)

Unless otherwise specified, all further statutory references are to the Business and Professions Code.

2

sent them unsolicited commercial email advertisements purporting to be from "Proactiv Special Offer," "Wen Hair Care," "Proactiv Special Bonus Deal," "Wen Healthy Hair," "Wen by Chaz Dean," "Proactiv Bonus Deal," "Proactiv Bonus Gift," and "Proactiv: Special Offer," which are not names or registered fictitious business names of existing entities, and are not traceable to Guthy via a WHOIS database search.[3]

Plaintiffs also alleged the "subject" lines of the emails asserted the recipient was entitled to a free or complimentary gift, without mentioning the gift was contingent upon a purchase.

We conclude no cause of action was stated for violation of section 17529.5, subdivision (a)(2) (misrepresented header information) or subdivision (a)(3) (misleading subject line) and affirm the judgment of dismissal.

We hold a header line in a commercial email advertisement does not misrepresent the identity of the sender merely because it does not identify the official name of the entity which sent the email, or merely because it does not identify an entity whose domain name is traceable from an online database, provided the sender's identity is readily ascertainable from the body of the email, as was the case here.

Further, the body of the emails made clear that free shipping or free gifts were contingent upon a purchase. As the trial court found, a reasonable sender would not have reason to believe that commercial missives like these were "likely to deceive a recipient, acting reasonably under the circumstances, about a material fact regarding the contents or subject matter of the message." (§ 17529.5, subd. (a)(3).)

---

[3]     WHOIS "is a publically available online database through which users can access information regarding domains, including the registrant's name, address, phone number, and e-mail address. See Definitions, Implementation, and Reporting Requirements Under the CAN–SPAM Act, 70 Fed.Reg. 25,426, 25,446 n.233 (proposed May 12, 2005) (to be codified at 16 C.F.R pt. 316). WHOIS data is compiled by registrars from information submitted by registrants." (*Gordon v. Virtumundo, Inc.* (9th Cir. 2009) 575 F.3d 1040, 1064, fn. 22 (*Gordon*).

# FACTUAL AND PROCEDURAL BACKGROUND

1. *Pleadings*.

The gravamen of the allegations in the operative first amended complaint is that Guthy sent Plaintiffs unsolicited commercial email advertisements which, instead of identifying the sender as Guthy, indicated the sender was "Proactiv Special Offer," "Wen Hair Care," "Proactiv Special Bonus Deal," "Wen Healthy Hair," "Wen by Chaz Dean," "Proactiv Bonus Deal," "Proactiv Bonus Gift," and "Proactiv: Special Offer," which are not names or registered fictitious business names of existing entities, and are not traceable to Guthy via a WHOIS search. Further, the emails contained "subject" lines stating Plaintiffs were entitled "to a free or complimentary gift without mentioning that the gift was contingent upon a purchase."

The first amended complaint was filed on behalf of lead plaintiff Greg Rosolowski and 45 individual co-plaintiffs, who collectively sought to be class representatives to represent a larger class. A number of the allegedly offending emails were attached as exhibits to the pleading. For example, Exhibit A included an email bearing the subject line "Exclusive WEN Deal: Complimentary Shipping, " and it originated "From: Wen Hair Care (mavk@r.andedox.info)."

2. *Demurrer*.

Guthy demurred, contending Plaintiffs' claims should be dismissed because they were preempted by federal law, specifically, the Controlling the Assault of Non-Solicited Pornography and Marketing Act of 2003 (15 U.S.C. § 7701 et seq.) (the CAN-SPAM Act), which preempts claims under section 17529.5, unless header or subject lines are materially false or misleading; the "from" lines contained famous brand names, identified with Guthy, the business entity whose name and address were set forth in the body of the same email; and the subject lines of the emails accurately referred to a "free" or "complimentary" gift and were not actionable.

4

3. *Opposition to demurrer*.

In opposition, Plaintiffs argued the emails violated section 17529.5, subdivision (a)(2), in that the names appearing on the "from" lines could not be traced to Guthy by way of an online database such as WHOIS, and also violated section 17529.5, subdivision (a)(3) because the subject lines represented the recipients were entitled to a free or complimentary gift, without mentioning such gift was contingent upon a purchase.

Plaintiffs further contended their claims were not preempted by the federal CAN-SPAM Act due to *material deception* (1) in the header line, which concealed the identity of the sender, namely Guthy, and (2) in the subject line, which enticed the recipients with the promise of free gifts, but the gifts came with strings attached.

4. *Trial court's ruling*.

The trial court sustained Guthy's demurrer to the first amended complaint without leave to amend, and set forth its rationale as follows:

The claims, as pled, set up theories that: (1) the email "header information" used by defendants was falsified, misrepresented, or forged within the meaning of section 17529.5, subdivision (a)(2); and the "subject line" was one the sender "knows would be likely to deceive a recipient, acting reasonably under the circumstances, about a material fact regarding the contents or subject matter of the message" within the meaning of section 17529.5, subdivision (a)(3). Said claims could escape preemption by the federal CAN-SPAM Act if and only if, each such misrepresentation were material. (*Hypertouch, Inc. v. Valueclick, Inc.* (2011) 192 Cal.App.4th 805, 833 (*Hypertouch*).)

"Since the 'Sender' line does not identify defendant Guthy-Renker by name and instead uses the name of defendant's various products, [Plaintiffs] collectively allege 'its spams say they are coming from people and companies that don't even exist.' . . . This is akin to complaining that an email from 'Buick' is falsely labeled because, in [Plaintiffs'] view, the sender should read 'General Motors Corporation.' The Court holds as a matter of law that this is not a material misrepresentation sufficient to overcome CAN-SPAM pre-emption. *Kleffman v. Vonage Holdings Corp*. (2010) 49 Cal.4th 334, 345-347 [(*Kleffman*)].

5

"The various 'Subject' lines are criticized as 'making affirmatively false material representations to the effect that the recipient is entitled to a free or complimentary gift.' . . . . The email text which emerges if one clicks to open, show that 'free shipping' is offered for an email saying so in the Subject line, that free shipping and a tube of Proactiv Oil Free Moisture is offered for an email saying so in the Subject line, and that free shipping and two free gifts are offered when the Subject line says 'Get 33% More with New Wen Hair Care System plus Two Free Gifts and Free Shipping.' The same is true as to the others presented, and no email is so simple as to merely offer a 'Free Gift' with nothing further said. Despite plaintiffs' protests that they were duped by these emails, the Court holds as a matter of law that a reasonable sender would not have reason to believe that commercial missives like these were 'likely to deceive a recipient, acting reasonably under the circumstances, about a material fact regarding the contents or subject matter of the message.' Thus, all of plaintiffs' claims are subject to federal pre-emption under CAN-SPAM Act."

In denying leave to amend, the trial court stated, "Plaintiffs have already put their cards on the table with the detailed pleading and the many emails attached thereto. A review of the theory of the case and the facts offered in support (as compared to the various matters pled as matters 'for which Plaintiffs lack evidentiary support at the present time' (First Amended Complaint ¶ 6 (alleged self-destructing emails), ¶ 7 (alleged faked online consent from recipients), demonstrates that this is exactly the kind of case which the CAN-SPAM Act was intended to pre-empt to avoid vexatious litigation of no substantial social value. Congress has the power to pre-empt California consumer law, and it has done so here. Plaintiffs have failed to show that they come within the narrow exception to CAN-SPAM's pre-emptive provisions. It is for this reason that this Court exercises its discretion to deny plaintiffs leave to amend. The theory of the case is manifest already and will not improve just by adding more prolixity and surmise to a pleading with more than enough already."

Plaintiffs filed a timely notice of appeal from the judgment of dismissal.

**CONTENTIONS**

Plaintiffs contend the operative first amended complaint stated facts sufficient to state causes of action against Guthy for violations of section 17529.5, subdivision (a)(2) (misrepresented header information) and subdivision (a)(3) (misleading subject line), and the claims are not preempted by federal law.

**DISCUSSION**

1. *Standard of appellate review.*

In determining whether a plaintiff has properly stated a claim for relief, "our standard of review is clear: ' "We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. [Citation.] We also consider matters which may be judicially noticed." [Citation.] Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. [Citation.] When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action. [Citation.] And when it is sustained without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm. [Citations.] The burden of proving such reasonable possibility is squarely on the plaintiff.' [Citations.]" (*Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1126, italics added (*Zelig*).) Our review is de novo. (*Ibid.*)

2. *Overview of section 17529.5 and the CAN–SPAM Act.*

a. *Section 17529.5.*

In 2003, "the California Legislature passed Senate Bill 186, which imposed broad restrictions on advertising in unsolicited commercial e-mail advertisements sent from or to a computer within California. [Citation.] According to the Legislature's 'findings and declarations,' the bill was adopted to address the 'skyrocket[ing]' costs and 'annoyance[s]' associated with 'spam,' which the statute defines as 'unsolicited commercial e-mail advertisements.' [Citations.] The Legislature concluded that, to effectively regulate the abuses associated with spam, it was necessary to target not only

7

the entities that send unsolicited commercial e-mail advertisements, but also the advertisers whose products and services are promoted in those e-mails." (*Hypertouch, supra,* 192 Cal.App.4th at p. 818.)

Section 17529.5 prohibits certain deceptive practices in commercial email, which practices are enumerated in subdivision (a) as follows:

"(a) It is unlawful for any person or entity to advertise in a commercial e-mail advertisement either sent from California or sent to a California electronic mail address under any of the following circumstances:  [¶]  (1) The e-mail advertisement contains or is accompanied by a third-party's domain name without the permission of the third party. [¶]  (2) The e-mail advertisement contains or is accompanied by falsified, misrepresented, or forged *header information*.[4] . . . [¶]  (3) The e-mail advertisement has a *subject line* that a person knows would be likely to mislead a recipient, acting reasonably under the circumstances, about a material fact regarding the contents or subject matter of the message." (Italics added.)

Section 17529.5, subdivision (b), in turn, contains an enforcement provision that permits the "Attorney General," "an electronic mail service provider" or a "recipient of an unsolicited commercial e-mail advertisement" to "bring an action against a person or entity that violates any provision of this section." (§ 17529.5, subds. (b)(1)(A)(i)-(iii).)

Section 17529.5, subdivision (b) also lists the remedies available under the statute, which include "either or both of the following:  [¶] (i) Actual damages. [¶] (ii) Liquidated damages of one thousand dollars ($1,000) for each unsolicited commercial e-mail advertisement transmitted in violation of this section, up to one million dollars

---

**4**     *Kleffman* observed, "California statutes do not define either the word 'header' or the phrase 'header information.'  [However,] the federal CAN–SPAM Act, which makes it unlawful to initiate transmission of a commercial e-mail message that contains or is accompanied by 'header information that is materially false or materially misleading' (15 U.S.C. § 7704(a)(1)), defines 'header information' as 'the source, destination, and routing information attached to an electronic mail message, including the originating domain name and originating electronic mail address, and any other information that appears in the line identifying, or purporting to identify, a person initiating the message' (15 U.S.C. § 7702(8))." (*Kleffman, supra*, 49 Cal.4th at p. 340, fn. 5.)

($1,000,000) per incident." (§ 17529.5, subd. (b)(1)(B).) The statute further provides, however, that if the court finds the "defendant established and implemented, with due care, practices and procedures reasonably designed to effectively prevent unsolicited commercial e-mail advertisements that are in violation of this section, the court shall reduce the liquidated damages . . . to a maximum of one hundred dollars ($100) for each unsolicited commercial e-mail advertisement, or a maximum of one hundred thousand dollars ($100,000) per incident." (§ 17529.5, subd. (b)(2).)

### b. *The CAN–SPAM Act.*

Shortly after California adopted S.B. 186, Congress enacted the CAN–SPAM Act, which, like S.B. 186, was passed " 'in response to mounting concerns associated with the rapid growth of spam e-mails.' [Citation.] The Act does 'not ban spam outright, but rather provides a code of conduct to regulate commercial e-mail messaging practices. Stated in general terms, the CAN–SPAM Act prohibits such practices as transmitting messages with "deceptive subject headings" or "header information that is materially false or materially misleading." [Citation.] The Act also imposes requirements regarding content, format, and labeling. For instance, unsolicited e-mail messages must include the sender's physical postal address, indicate they are advertisements or solicitations, and notify recipients of their ability to decline further mailings. [Citation].' [Citation.]" (*Hypertouch, supra*, 192 Cal.App.4th at p. 823.)

The CAN–SPAM Act "includes a provision that expressly preempts state statutes that regulate the use of commercial e-mail 'except to the extent that any such statute . . . prohibits falsity or deception in any portion of a commercial [e-mail].' (15 U.S.C., § 7707, subd. (b)(1).) The preemption clause reflects one of the primary goals of the CAN–SPAM Act: to regulate commercial electronic mail "on a nationwide basis." (15 U.S.C., § 7701, subd. (b)(1).) As stated in the Congressional findings accompanying the Act, the federal statute was intended to 'to implement "one national standard" [citation]' regarding the content of commercial e-mail because 'the patchwork of state laws had proven ineffective.' [Citation.]" (*Hypertouch, supra*, 192 Cal.App.4th at p. 824.)

9

3.  *The Kleffman decision.*

In *Kleffman*, the Supreme Court addressed "the scope of section 17529.5(a)(2), which makes it 'unlawful . . . to advertise in a commercial e-mail advertisement' that 'contains or is accompanied by *falsified, misrepresented, or forged header information.*' " (*Kleffman, supra*, 49 Cal.4th at pp. 339-340, italics added.)

In *Kleffman*, as in the instant case, the plaintiff sued under section 17529.5(a)(2), alleging Vonage, by and through its marketing agents, sent him 11 unsolicited e-mail advertisements for its broadband telephone services using " '11 different domain names: superhugeterm.com; formycompanysite.com; ursunrchcntr.com; urgrtquirkz.com; countryfolkgospel.com; lowdirectsme.com; yearnfrmore.com; openwrldkidz.com; ourgossipfrom.com; specialdlvrguide.com; and struggletailssite.com.' These '11 different domain names can [all] be traced to a single physical address' in Nevada where Vonage's marketing agent 'is located.' 'None of these domain names provides any indication to the recipient (or its spam filter) that the advertisement is from Vonage.' Vonage's 'use of these multiple domain names . . . reduces the likelihood that an internet service provider will identify these . . . advertisements as spam and block them before they reach the email inboxes of [plaintiff] and class members.' " (*Kleffman, supra*, 49 Cal.4th at p. 338.)

The discrete issue addressed by the Supreme Court in *Kleffman* was whether sending unsolicited commercial e-mail advertisements from multiple domain names for the purpose of bypassing spam filters constitute falsified, misrepresented, or forged header information within the meaning of section 17529.5, subdivision (a)(2). (*Kleffman, supra*, 49 Cal.4th at pp. 337, 339.) *Kleffman* concluded the use of multiple domain names for the purposes of bypassing spam filters does not violate the statute.

At the outset of its analysis, *Kleffman* noted there was no dispute the domain names used in the challenged emails "actually exist and are technically accurate, literally

correct, *and fully traceable to Vonage's marketing agents*,"[5] and the e-mails therefore "neither contained nor were accompanied by '*falsified . . . or forged* header information' within the meaning of section 17529.5(a)(2)." (*Kleffman, supra,* 49 Cal.4th at p. 340, italics added.) The parties agreed the issue was whether the emails contained or were accompanied by " '*misrepresented . . .* header information' " within the meaning of that subdivision. (*Kleffman, supra*, at p. 340, italics added.) The plaintiff argued the domain names, while not actually false, were "misrepresented" because their random, garbled, and nonsensical nature created a misleading or deceptive impression the emails were all from different entities when in fact they were all from Vonage via a single marketing agent. (*Id*. at pp. 341-342.)

Based on a close reading of the text and legislative history of the statutory language in issue, the Supreme Court rejected the plaintiff's argument the word "misrepresented" in section 17529.5, subdivision (a)(2) means " 'misleading' " or " 'likely to mislead.' " (*Kleffman, supra*, 49 Cal.4th at pp. 342-345.) The court found the Legislature did not intend subdivision (a)(2) "generally to prohibit the use of multiple domain names." (*Kleffman, supra*, at p. 345.) Thus, as the plaintiff in *Kleffman* conceded, the mere use of multiple domain names did not " 'in and of itself' " violate subdivision (a)(2). (*Kleffman*, *supra*, at p. 345.)

*Kleffman* further found the use of a domain name in a single e-mail that "does not make clear the identity of either the sender or the merchant-advertiser on whose behalf the e-mail advertisement is sent" is not prohibited by section 17529.5, subdivision (a)(2). (*Kleffman, supra*, 49 Cal.4th at p. 345.) *Kleffman* determined such use does not in fact make any representation, express or implied, regarding the email's source. (*Id*. at pp. 345-346.) *Kleffman* also concluded that construing the statute otherwise would raise a substantial question with regard to federal preemption. (*Kleffman*, *supra*, at p. 346.)

---

[5]    We make the observation that a typical recipient of email would not attempt to search the WHOIS database for the sender's identity before deciding whether to open up an email. Be that as it may, this court is not writing on a clean slate in this area.

While expressly declining to define the full scope of the statutory phrase " 'misrepresented . . . header information,' " *Kleffman* concluded: "[A] single e-mail with an accurate and traceable domain name neither contains nor is accompanied by 'misrepresented . . . header information' within the meaning of section 17529.5(a)(2) merely because its domain name is . . . 'random,' 'varied,' 'garbled,' and 'nonsensical' when viewed in conjunction with domain names used in other e-mails. An e-mail with an accurate and traceable domain name makes no *affirmative* representation or statement of fact that is false . . . [and] . . . cannot reasonably be understood to be an implied assertion that the source of that e-mail is different from the source of another e-mail containing a different domain name." (*Kleffman, supra*, 49 Cal.4th at pp. 346-347 & fn. 11.)

4. *Irrespective of the allegedly untraceable domain names herein, the identity of the sender was readily ascertainable from the body of the emails; therefore, Plaintiffs failed to state a cause of action against Guthy for misrepresented header information under section 17529.5, subdivision (a)(2).*

The instant case presents a different factual scenario than the one addressed by the Supreme Court in *Kleffman* in a critical respect. In *Kleffman*, it was undisputed "the domain names used to send Vonage's e-mail advertisements, and reflected in the header information of these e-mail advertisements, actually exist and are technically accurate, literally correct, and fully traceable to Vonage's marketing agents." (*Kleffman, supra,* 49 Cal.4th at p. 340.)

Here, in contrast, Guthy used domain names ("Proactiv Special Offer," "Wen Hair Care," "Proactiv Special Bonus Deal," "Wen Healthy Hair," "Wen by Chaz Dean," "Proactiv Bonus Deal," "Proactiv Bonus Gift," and "Proactiv: Special Offer") which were *not traceable* to Guthy. On demurrer, accepting these properly pleaded facts as true (*Czajkowski v. Haskell & White, LLP* (2012) 208 Cal.App.4th 166, 173), Plaintiffs alleged said names "are not names of existing companies or persons, there are no such entities or persons, and no such entities or persons are registered as fictitious business names." Further, the purported senders "were not the people or entities advertising in the emails. The domains from which these emails originated were not traceable to [Guthy].

12

A WHOIS search would not identify [Guthy] as the registrant of the domains from which the emails originated."

The *Kleffman* court did not specify what is meant by a traceable domain name. It simply stated all 11 emails at issue could be "traced" to a single physical address in Nevada where Vonage's marketing agent was located. (*Kleffman, supra*, 49 Cal.4th at p. 338.) There, it was undisputed "the domain names used to send Vonage's e-mail advertisements, and reflected in the header information of these e-mail advertisements, actually exist[ed] and [were] technically accurate, literally correct, and fully traceable to Vonage's marketing agents." (*Id.* at p. 340.)

> a. *The Balsam decision*.

Unlike *Kleffman*, where all of the domain names were accurate and traceable to the sender, in *Balsam v. Trancos, Inc.* (2012) 203 Cal.App.4th 1083 (*Balsam*), "the domain names were *not* traceable to the actual sender. *The header information [was] 'falsified' or 'misrepresented' because Trancos deliberately created it to prevent the recipient from identifying who actually sent the message*. Thus, the nonsensical domain name 'misstepoutcome.com' neither disclose[d] Trancos's name nor [could] it be linked to Trancos using any public database. While, as *Kleffman* states, an e-mail with an accurate *and traceable* domain name makes no affirmative representation or statement of fact that is false, an e-mail with a made-up *and untraceable* domain name affirmatively *and falsely* represents the sender has no connection to Trancos." (*Balsam, supra*, 203 Cal.App.4th at p. 1098, certain italics added.) *Balsam* concluded *Kleffman* should be "read . . . commonsensically . . . to mean that a domain name is 'traceable' to the sender if the recipient of an e-mail could ascertain the sender's identity and physical address through the use of a publicly available database such as WHOIS." (*Balsam, supra,* 203 Cal.App.4th at p. 1098.)

*Balsam* "express[ed] no judgment about other circumstances in which (1) header information might be falsified or misrepresented for purposes of the statute, or (2) the presence of other information identifying the sender *in the body of the e-mail* could affect liability under the statute." (*Balsam*, *supra*, 203 Cal.App.4th at p. 1101, fn. 17, italics

13

added; see *Asis Internet Services v. Subscriberbase Inc.,* No. 09-3503 SC, 2010 WL 1267763 (N.D.Cal. April 1, 2010) at p. 5 ["A finder of fact may therefore reasonably consider the body of an email or a hyperlinked page in determining whether misrepresentations in the subject lines were actually material"].)

b. *Body of the emails was sufficient to enable recipient to identify Guthy as the sender.*

Guided by the above, we turn to the facts of the instant case. Although the identity of the sender of the subject emails in the "from" line could not be ascertained through the use of a publicly available database such as WHOIS, the body of the emails was sufficient to enable the recipient to identify Guthy as the sender. The emails were advertisements for Guthy's various consumer brands. The emails provided a hyperlink to Guthy's website, and provided an unsubscribe notice as well as a physical address in Palm Desert, California. Plaintiffs cannot plausibly allege that Guthy attempted to conceal its identify, as the clear purpose of emails was to drive traffic to Guthy's website. The complaint concedes as much, in that it alleged if a "recipient clicks in an email's body, a link takes him to [Guthy's] website where he is encouraged to make a purchase."

Giving section 17529.5(a)(2) a commonsense reading, as did the *Balsam* court, we conclude a header line does not misrepresent the identity of the sender merely because it does not identify the official name of the entity which sent the email, or merely because it does not identify an entity whose domain name is traceable via a database such as WHOIS, *provided* the sender's identity is readily ascertainable from the body of email, as was the case here.

5. *Plaintiffs failed to state a cause of action on the theory the emails contained misleading subject lines (§ 17529.5, subdivision (a)(3)).*

As indicated, section 17529.5, subdivision (a)(3), makes it unlawful for a commercial email advertisement to contain "a subject line that a person knows would be likely to mislead a recipient, acting reasonably under the circumstances, about a material fact regarding the contents or subject matter of the message."

14

Plaintiffs alleged the subject lines in the various emails falsely represented that the recipients were entitled to a free or complimentary gift without mentioning that receipt of such a gift was contingent upon a purchase.

In sustaining the demurrer, the trial court ruled, "The email text which emerges if one clicks to open, show that 'free shipping' is offered for an email saying so in the Subject line, that free shipping and a tube of Proactiv Oil Free Moisture is offered for an email saying so in the Subject line, and that free shipping and two free gifts are offered when the Subject line says 'Get 33% More with New Wen Hair Care System plus Two Free Gifts and Free Shipping.' The same is true as to the others presented, and no email is so simple as to merely offer a 'Free Gift' with nothing further said. Despite plaintiffs' protests that they were duped by these emails, the Court holds as a matter of law that a reasonable sender would not have reason to believe that commercial missives like these were 'likely to deceive a recipient, acting reasonably under the circumstances, about a material fact regarding the contents or subject matter of the message.' "

Plaintiffs acknowledge the emails, *in their entirety*, are not misleading because the body of the emails "make clear that receipt of [Guthy's] 'free' gifts is conditional upon a purchase." Nonetheless, Plaintiffs' theory is that the emails are actionable because liability under section 17529.5, subdivision (a)(3), turns upon whether the emails' *subject lines* are misleading, not whether the emails are misleading *in their entirety*. The argument is unpersuasive.

Again, giving section 17529.5, subdivision (a)(3) a commonsense reading (see *Balsam, supra,* 203 Cal.App.4th at p. 1098), we conclude, as did the trial court, that the subject lines were not likely to mislead a recipient, acting reasonably under the circumstances, about a material fact regarding the contents or subject matter of the message. (§ 17529.5, subd. (a)(3).) The email advertisements plainly and conspicuously stated the conditional nature of the offer, so that an email recipient, acting reasonably under the circumstances, would not be misled about a material fact with respect to the nature of the offer of a free gift or free shipping. Therefore, a reasonable sender would not have reason to believe the subject lines were likely to mislead a recipient, acting

15

reasonably under the circumstances, about a material fact regarding the contents or subject matter of the message.  (*Ibid*.)

Plaintiffs contend the facts alleged in support of their assertion that Guthy violated section 17529.5, subdivision (a)(3), are nearly identical to those in *Hypertouch, supra*, 192 Cal.App.4th 805.  In *Hypertouch*, some of the subject lines "state that the recipient of the e-mail can get a free gift ('Get a $300 gift card FREE'; 'Get a FREE Golf Retreat to 1 of 10 destinations'), others suggest that the recipient can obtain something free for doing a particular task ('Let us know your opinion and win a free gift card'; 'Do you think Hillary will win?  Participate now for a Visa gift card'), while still others contain a variety of phrases that might indicate to the recipient that there are terms and conditions that must be fulfilled to obtain the gift ('Let us buy you a designer department store gift card.  Participate now'; 'Participate to receive a Holiday iPhone! (See offer for details)'.)"  (*Hypertouch, supra*, 192 Cal.App.4th at p. 840.)

*Hypertouch* reasoned, "If a subject line creates the impression that the content of the e-mail will allow the recipient to obtain a free gift by doing one act (such as opening the e-mail or participating in a single survey), and the content of the e-mail reveals that the 'gift' can only be obtained by undertaking more onerous tasks (such as paying money for the gift or agreeing to partake in other offers), the subject line is misleading about the contents of the e-mail."  (*Hypertouch, supra,* 192 Cal.App.4th at p. 838.)

Unlike *Hypertouch*, we view an email's subject line in conjunction with the body of the email, rather than in isolation.  We conclude the subject lines' offer of a free gift was not likely to mislead a recipient, acting reasonably under the circumstances, about a material fact (§ 17529.5, subd. (a)(3)), because the email advertisements made it clear that a free gift was conditional upon a purchase.  Accordingly, Plaintiffs failed to state a cause of action under section 17529.5, subdivision (a)(3).

6. *Issue of federal preemption not reached.*

Because we conclude Plaintiffs failed to state sufficient facts to allege violation of section 17529.5, subdivision (a)(2) (misrepresented header information) or subdivision (a)(3) (misleading subject lines), it is unnecessary to address Guthy's argument the CAN-SPAM Act preempts Plaintiffs' claims.  (See *Martin v. PacificCare of California* (2011) 198 Cal.App.4th 1390, 1409 ["Because we conclude [Health & Safety Code] section 1371.25 bars the Martins' claims, we do not reach the question whether the Medicare Act preempts the Martins' claims"].)

## DISPOSITION

The judgment of dismissal is affirmed.  Respondent shall recover their costs on appeal.

**CERTIFIED FOR PUBLICATION**

KLEIN, P. J.

We concur:

KITCHING, J.

ALDRICH, J.

17