Filed 6/21/21

**CERTIFIED FOR PARTIAL PUBLICATION***

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

|  |  |
|---|---|
| MARTA GREENBERG ET AL., Plaintiffs and Appellants, v. DIGITAL MEDIA SOLUTIONS, LLC, Defendant and Respondent. | A158854 (San Francisco County Super. Ct. No. CGC-18-572010) |

Plaintiffs Marta Greenberg, John Judge, Karen Mandel, Andrew Monroe, and Katie Van Cleave (collectively, the recipients) received unsolicited emails that advertised products sold by defendant Digital Media Solutions, LLC (DMS), which does business as Platinum Auto Warranty. The emails were not sent by DMS itself, but instead by third party "marketing partners" of DMS. The recipients sued DMS under Business and Professions Code[1] section 17529.5, which makes it unlawful to advertise in commercial emails under specified circumstances.

The trial court sustained DMS's demurrer and entered a judgment dismissing the case. We affirm in part and reverse in part. In the unpublished portion of this opinion, we conclude that the court correctly dismissed the recipients' challenge to the emails' subject lines. In the

---

\* Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of part II.B.

[1] All subsequent statutory references are to the Business and Professions Code.

published portion, we conclude that the court erred by dismissing the recipients' challenge to the emails' domain names. In doing so, we hold that a recipient of a commercial email advertisement sent by a third party is not precluded as a matter of law from stating a cause of action under section 17529.5 against the advertiser for the third party's failure to provide sufficient information disclosing or making traceable the third party's own identity. We further hold that such a cause is not precluded simply because such an email sufficiently identifies the advertiser.

## I.
### FACTUAL AND PROCEDURAL BACKGROUND

The recipients initiated this action in late 2018. Their complaint alleged that they received at least 282 unsolicited commercial email advertisements (spam). (See § 17529.1, subd. (o).) The spam was allegedly from "third-party spam networks and publishers ('[m]arketing [p]artners')," including defendant "Bilco Media Inc.," which was alleged to be "an unknown entity of unknown organization with an unknown primary place of business"; defendant Allan Hughes; and other defendant marketing partners identified as Does one through five.[2] The recipients alleged that DMS contracted with these marketing partners to send email advertisements on its behalf, and these partners sent "some, if not all," of the 282 unsolicited emails.

The complaint contained one cause of action under section 17529.5, subdivision (a)(2) (subdivision (a)(2)). Specifically, the complaint alleged that the emails the recipients received contained "materially false and deceptive

---

[2] The only defendant that appeared below was DMS, and the liability of the other named defendants is not at issue in this appeal.

2

information" pertaining to the emails' domain names, "From Names," and "Subject Lines."[3]

As to the domain names, the complaint alleged that the 282 emails included dozens of different ones, most of which neither identified the actual sender on their faces nor were readily traceable. The complaint reproduced a "representative sample" of an email received by plaintiff Greenberg, which was purportedly sent by "Vehicle.Service.Plan@badealz.com." The complaint alleged that "81% [of the emails at issue] were sent from domain names," like badealz.com, "that were registered to [defendant Bilco Media Inc.], an entity that does not exist, and that claims an address at a commercial mail receiving agency without specifying the box number."

As to the from names, the complaint alleged that they often consisted of the phrase " 'Vehicle Service Plan[,]' which [was] generic text that misrepresent[ed] *who[m]* the spam [was] really from." Other times, the from names consisted of the similarly generic phrase of "Vehicle Protection Info." According to the complaint, the emails "[did] not identify the sender in [their bodies], so the only way a recipient could even attempt to identify the [m]arketing [p]artner responsible for the spam [was] to click on a link contained in the spam or search the source code of the email."

Finally, as to the subject lines, the complaint alleged that they contained "falsified and/or misrepresented information." The subject line of the sample email to Greenberg included her email address as follows:

---

[3] "Domain name" is statutorily defined as "any alphanumeric designation that is registered with or assigned by any domain name registrar as part of an electronic address on the Internet." (§ 17529.1, subd. (e).) The complaint defines "From Name" as the part of an email's "From Line" that does not include the sender's email address. "So, for example, if an email's From Line says: 'John Doe <johndoe@yahoo.com>', the From Name is *just* 'John Doe.' " The complaint does not define "Subject Line."

"[username]@yahoo.com, please confirm your extended warranty plan." According to the complaint, subject lines containing the recipient's email address and referring to an existing warranty plan "falsely reference[d] a preexisting business relationship that does not in fact exist, for the purpose of inducing the recipient into believing that the email [was] from an entity with whom the recipient has done business, which [was] designed to lure the recipient into clicking and opening the spam, and ultimately, sending money to" DMS.

The body of the sample email stated:

> ":: Your Vehicle's Warranty May Be Expiring Within 28 Days ::
>
> "View your warranty options below and see how you can prevent car trouble from breaking your bank.
>
> "Protect yourself from costly vehicle repairs. Without protection, auto issues could lead to severe financial hardship."

A box below this text read, "View Your Warranty Options Here." This box was a hyperlink to platinumautowarranty.com, a website operated by DMS. The body of the email closed with an unsubscribe notice and the following business name and address: "Transparent Auto Warranty, 7000 W. Palmetto Park Rd. Suite 210, Boca Raton, FL 33433."

DMS demurred to the complaint, arguing that the recipients could not state a claim for a violation of subdivision (a)(2) in light of *Rosolowski v. Guthy-Renker* (2014) 230 Cal.App.4th 1403 (*Rosolowski*). The trial court largely agreed. In sustaining the demurrer, the court noted that the bodies of the emails identified Transparent Auto Warranty, and the recipients stated they could amend the complaint to allege that DMS is the registrant and operator of transparentautowarranty.com. The court also observed that the

4

complaint alleged a recipient could click on a hyperlink in the emails' bodies and be taken to platinumautowarranty.com, another website registered to DMS. The court determined that the recipients therefore could not "plausibly allege that [DMS] attempted to conceal its identity, as the clear purpose of its e-mails, apparent from their face, was to drive traffic to its [Platinum Auto Warranty] website."

Although the trial court ruled that the recipients could not state a claim regarding the emails' subject lines under subdivision (a)(2), it granted leave to amend the complaint to allege a claim that the subject lines were misleading under section 17529.5, subdivision (a)(3) (subdivision (a)(3)). After the recipients declined to amend the complaint, the court dismissed it with prejudice and entered judgment in favor of DMS.

## II.
### DISCUSSION

#### A. *Legal Background and Standard of Review*

California has a long-held antipathy toward spam. In 2003, the Legislature passed Senate Bill No. 186 (2003–2004 Reg. Sess.), sweeping legislation that would have banned all spam sent to California residents. Before the law went into effect, however, Congress reacted to the growing " ' "patchwork of state laws" ' " governing spam by enacting the CAN-SPAM Act (15 U.S.C. § 7701 et seq.) (CAN-SPAM Act or Act).[4] (*Rosolowski, supra,* 230 Cal.App.4th at p. 1412.) " 'The Act does "not ban spam outright, but rather provides a code of conduct to regulate commercial e-mail messaging practices. Stated in general terms, the . . . Act prohibits such practices as transmitting messages with 'deceptive subject headings' or 'header

---

[4] The full name of the legislation is the Controlling the Assault of Non-Solicited Pornography and Marketing Act of 2003.

5

information that is materially false or materially misleading.' [Citation.] The Act also imposes requirements regarding content, format, and labeling. For instance, unsolicited e-mail messages must include the sender's physical postal address, indicate they are advertisements or solicitations, and notify recipients of their ability to decline further mailings." ' " (*Ibid.*)

With the passage of the Act, many state laws regulating spam, including much of Senate Bill No. 186, were preempted. The Act includes one exception to preemption, however: A state statute is not preempted "to the extent that any such statute . . . prohibits falsity or deception in any portion of a commercial [email] message or information attached thereto." (15 U.S.C. § 7707(b)(1).) Section 17529.5, which was adopted in 2003 as part of Senate Bill No. 186, falls within this exception. (*Rosolowski, supra,* 230 Cal.App.4th at pp. 1412–1413.)

In relevant part, subdivision (a) of section 17529.5 provides that "[i]t is unlawful for any person or entity to advertise in a commercial e-mail advertisement either sent from California or sent to a California [email] address under any of the following circumstances:

. . .

"(2) The e-mail advertisement contains or is accompanied by falsified, misrepresented, or forged header information. . . . ;

"(3) The e-mail advertisement has a subject line that a person knows would be likely to mislead a recipient, acting reasonably under the circumstances, about a material fact regarding the contents or subject matter of the message."

Thus, subdivision (a)(2) makes it illegal to advertise with email that has header information that is falsified, misrepresented, or forged, and subdivision (a)(3) makes it illegal to advertise with email that has a subject line that is reasonably likely to mislead a recipient about a material fact. If

6

the representation in the header information or subject line is not material, its regulation is preempted by the CAN-SPAM Act. (See *Kleffman v. Vonage Holdings Corp.* (2010) 49 Cal.4th 334, 346 (*Kleffman*); *Omega World Travel, Inc. v. Mummagraphics, Inc.* (4th Cir. 2006) 469 F.3d 348, 355.)

We review de novo a claim that a demurrer was improperly sustained. (*Ram v. OneWest Bank, FSB* (2015) 234 Cal.App.4th 1, 9.) In doing so, " '[w]e give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. [Citation.] Further, we treat the demurrer as admitting all material facts properly pleaded, but do not assume the truth of contentions, deductions[,] or conclusions of law.' [Citation.] '[W]e are not bound by the trial court's analysis' of questions of law and 'independently construe statutory law.' " (*Id.* at pp. 9–10.)

B.      *The Trial Court Properly Rejected the Recipients' Challenge to the Emails' Subject Lines.*

The trial court held that the recipients could not state a claim under subdivision (a)(2) regarding the emails' subject lines, because that provision regulates headers, and the court concluded that headers do not include subject lines. The court determined that the language and structure of section 17529.5, as well as the Supreme Court's analysis in *Kleffman*, compelled a conclusion that claims based on an email's subject line may be cognizable under subdivision (a)(3), but not under subdivision (a)(2).

At oral argument, the recipients clarified their position. In their view, the trial court erred because challenges to emails' subject lines may be cognizable under *both* subdivision (a)(2) and subdivision (a)(3), depending on the nature of the challenge. They accept that such a challenge is cognizable under subdivision (a)(3) when it alleges that a subject line contains information that "would be likely to mislead a recipient . . . about a material

7

fact regarding *the contents or subject matter of the [email] message*."
(§ 17529.5, subd. (a)(3), italics added.)  But they argue that such a challenge
is also cognizable under subdivision (a)(2) when header information is
"falsified, misrepresented, or forged" within the meaning of that provision,
irrespective of the contents or subject matter of the email.  And, according to
them, "header information" under subdivision (a)(2) includes subject lines.

We agree with the trial court that the recipients' challenge to the
emails' subject lines fails under subdivision (a)(2).  In arguing that "header
information" under that provision includes subject lines, the recipients cite
many cases from other jurisdictions that have stated or assumed that an
email's subject line is part of the email's header.[5]  While we accept that in
many contexts and cases email headers are considered to include subject
lines, section 17529.5 regulates subject lines separately from headers, under
subdivision (a)(3) instead of subdivision (a)(2).

As *Kleffman* observed, "California statutes do not define either the
word 'header' or the phrase 'header information.' " (*Kleffman*, *supra*,
49 Cal.4th at p. 340, fn. 5.)  *Kleffman* had no need to interpret the statutory
phrase either, as it was undisputed "that the domain names in question were
part of the e-mails' 'header information' within the meaning of
[subdivision (a)(2)]." (*Id.* at p. 340.)  But the Supreme Court did quote the

---

[5] The recipients filed a request for judicial notice of 12 such cases, as
well as other examples of popular usage.  The recipients also sought judicial
notice of legislative history of Senate Bill No. 186, a Federal Trade
Commission publication, and eight documents of which they sought judicial
notice below but on which the trial court did not explicitly rule.  We agree
with the recipients that we may presume that the court granted judicial
notice of the eight documents it did not address.  (See *Aaronoff v. Martinez-
Senftner* (2006) 136 Cal.App.4th 910, 918–919.)  We deny the request as to
the remaining documents as unnecessary to our decision.

8

CAN-SPAM Act's definition of "header information," which is " 'the source, destination, and routing information attached to an [email] message, including the originating domain name and originating [email] address, and any other information that appears in the line identifying, or purporting to identify, a person initiating the message.' " (*Id.* at p. 340, fn. 5, quoting 15 U.S.C. § 7702(8).) The Court also noted that "[a] similar definition was proposed, but not adopted, during the legislative process that culminated in [subdivision (a)(2)'s] enactment." (*Kleffman*, at p. 340, fn. 5.) In our view, this discussion suggests that "header information" should be interpreted in line with the federal definition—which undisputedly does not include subject-line information.[6]

Even if challenges to emails' subject lines could be brought under subdivision (a)(2), we would be hard pressed to conclude that the subject lines alleged in this case contained information that was both material and "falsified, misrepresented, or forged." We again point to *Kleffman*, which rejected the argument that subdivision (a)(2) prohibits information that is merely misleading. (*Kleffman, supra*, 49 Cal.4th at pp. 342–343.) As the Supreme Court explained, " 'when different words are used in contemporaneously enacted, adjoining subdivisions of a statute, the inference is compelling that a difference in meaning was intended.' " (*Id.* at p. 343.) Thus, "the meaning of the word 'misrepresented' in [subdivision (a)(2)] takes

---

[6] DMS points out that in *Wagner v. Spire Vision LLC* (N.D. Cal. Feb. 27, 2015, No. C 13-04952 WHA) 2015 WL 876514, the district court held that "header information" under subdivision (a)(2) "clearly does not include an email's subject line." (*Wagner*, at *20; accord *Holden v. Fluent, Inc.* (N.D. Cal. Nov. 20, 2020, No. 20-cv-03816-JCS) 2020 WL 6822914, at *33.) We agree with the recipients, however, that *Wagner* "misread *Kleffman*" as "endors[ing] the federal definition [of header information] when in fact *Kleffman* merely quoted the federal definition." (See *Wagner*, at *20.)

color from the other words listed in the same provision—'falsified' and 'forged'—not from the distinctly different 'likely to mislead' language" in subdivision (a)(3). (*Kleffman*, at p. 343.) In other words, header information is not actionable under subdivision (a)(2) if it is merely " 'misleading' or 'likely to mislead.' " (*Kleffman*, at p. 345.)

The subject lines at issue allegedly set forth the recipient's email address followed by a comma and phrases like "Confirm Your Auto Warranty Plan Extension" or "Your Auto Warranty is Running Out!" The complaint alleged that these subject lines violated subdivision (a)(2) because they "falsely reference[d] a preexisting business relationship that does not in fact exist." While we accept that these subject lines are ambiguous and arguably misleading by suggesting the recipient already has an auto warranty with the sender, it is far more questionable that the statements can be considered material and "falsified, misrepresented, or forged."

To begin with, subdivision (a)(2) governs header information, which mainly concerns the source of emails. In this context, the phrase "falsified, misrepresented, or forged" more naturally addresses the falsification of existing electronic information rather than the assertion of a new misrepresentation unrelated to an email's source. (See, e.g., *United States v. Rowland* (2d Cir. 2016) 826 F.3d 100, 108 [context matters in interpreting statutory term "falsified"].) But even if the phrase addresses such assertions, it does not easily cover the subject lines alleged here. A directive to confirm one's auto warranty plan or extension does not make any affirmative factual representation whatsoever. (See *Kleffman*, *supra*, 49 Cal.4th at p. 347.) And while a phrase like "Your Auto Warranty is Running Out!" *is* a factual statement, it is either technically true or immaterial. If a recipient has an auto warranty, the statement that the warranty is running out is technically

10

true.  And if a recipient does not have a warranty, the recipient is presumably aware of that, rendering the statement immaterial in the sense that a reasonable such recipient would not likely be influenced by it.  (See *Kwikset Corp. v. Superior Court* (2011) 51 Cal.4th 310, 332–333 [misrepresentation is material if reasonable person " ' "would attach importance to its existence or nonexistence in determining [the person's] choice of action in the transaction in question" ' "].)

In short, the trial court properly rejected the portion of the recipients' claim challenging subject lines under subdivision (a)(2).

> C.     *The Trial Court Incorrectly Dismissed the Recipients' Challenge to the Emails' Domain Names.*

A closer question is presented by the recipients' claim that the emails' domain names and from names violated subdivision (a)(2).  As we have said, the recipients alleged that this header information was unlawful both because the from names consisted of generic phrases like "Vehicle Service Plan" or "Vehicle Protection Info" and the domain names failed to identify the actual senders—i.e., DMS's marketing partners—or provide enough information to make them readily traceable using a publicly available online database.  We conclude that the recipients may proceed on the portion of the claim involving domain names.

> 1.     Applicable case law

Several decisions bear on our analysis, starting with *Kleffman*.  The plaintiff in that case alleged that the defendant, through its marketing partners, sent him unsolicited email advertisements for its broadband telephone services using a variety of peculiar domain names, such as superhugeterm.com; urgrtquirkz.com; and ourgossipfrom.com.  (*Kleffman, supra*, 49 Cal.4th at p. 338.)  The plaintiff asserted that the defendant was

11

liable under subdivision (a)(2) because these domain names failed to identify the true sender and reduced the likelihood that the email would be identified and blocked as spam. (*Kleffman,* at p. 338.)

The Supreme Court rejected the plaintiff's claim. It concluded that the emails "neither contained nor were accompanied by 'falsified . . . or forged header information' within the meaning of [subdivision (a)(2)]," because the domain names "actually exist[ed] and [were] technically accurate, literally correct, and fully traceable to [the defendant's] marketing agents." (*Kleffman, supra*, 49 Cal.4th at p. 340.) The plaintiff argued that even if the information was not falsified or forged, it was nonetheless "misrepresented" because the domain names' random nature created the misleading impression that the emails were from different entities when in fact it was all from the defendant, albeit sent through its marketing agents. (*Id.* at pp. 341–342.) While the Court declined to define the full scope of the statutory phrase " 'misrepresented . . . header information,' " it held that "a single e-mail with an accurate and traceable domain name neither contains nor is accompanied by 'misrepresented . . . header information' within the meaning of [subdivision (a)(2)] merely because its domain name is . . . 'random,' 'varied,' 'garbled,' and 'nonsensical' when viewed in conjunction with domain names used in other e-mails. [Fn. omitted.] An e-mail with an accurate and traceable domain name makes no *affirmative* representation or statement of fact that is false . . . [and] cannot reasonably be understood to be an implied assertion that the source of that e-mail is different from the source of another e-mail containing a different domain name." (*Id.* at pp. 346–347 & fn. 11.)

Subsequently, this division considered email advertisements whose domain names did not identify the actual sender and were not "readily

12

traceable to the sender." (*Balsam v. Trancos, Inc.* (2012) 203 Cal.App.4th 1083, 1101 (*Balsam*).) Unlike the *Kleffman* defendant, the main defendant in *Balsam* was not the actual advertiser but instead a third-party Internet advertising business that advertisers paid to send offers to email addresses the third party had acquired. (*Id.* at pp. 1088–1089.) It was undisputed for purposes of the appeal that the third party "intentionally used only privately registered, meaningless domain names in order to prevent e-mail recipients from being able to identify it as the sender, or to contact it except by sending a blind reply e-mail to an address the [recipient] would have no way of linking to [the third party]." (*Id.* at p. 1096.)

In affirming a posttrial judgment entered against the third party, *Balsam* held that "header information in a commercial e-mail is falsified or misrepresented for purposes of [subdivision (a)(2)] when it uses a sender domain name that neither identifies the actual sender on its face nor is readily traceable to the sender using a publicly available online database such as WHOIS."[7] (*Balsam*, *supra*, 203 Cal.App.4th at pp. 1093, 1101, italics omitted.) We decided that there was "good reason" to conclude that "a commercial e-mailer's deliberate use of untraceable, privately registered domain names to conceal its identity" violates subdivision (a)(2), given that each of the millions of spam sent each month "has the potential to cause harm to the recipient, ranging from mere annoyance or offense to more tangible harms such as inducing the recipient to visit Web sites that place

---

[7] "WHOIS 'is a public[l]y available online database through which users can access information regarding domains, including the registrant's name, address, phone number, and e-mail address.' " (*Rosolowski, supra,* 230 Cal.App.4th at p. 1407, fn. 3.)

13

malware or viruses on their computer, defraud them out of money, or facilitate identi[t]y theft." (*Balsam*, at pp. 1098–1099.)

Two years after *Balsam*, the Second District Court of Appeal decided *Rosolowski*. In that case, the sender of the emails at issue was the actual advertiser. (*Rosolowski, supra*, 230 Cal.App.4th at p. 1416.) The plaintiffs sued on the basis that "instead of identifying the sender as [the defendant], [the emails] indicated the sender was 'Proactiv Special Offer,' 'Wen Hair Care,' 'Proactiv Special Bonus Deal,' 'Wen Healthy Hair,' 'Wen by Chaz Dean,' 'Proactiv Bonus Deal,' 'Proactiv Bonus Gift,' and 'Proactiv: Special Offer,' which are not names or registered fictitious business names of existing entities, and are not traceable to [the defendant] via a WHOIS search." (*Id.* at pp. 1407–1408.)

The Second District concluded that the plaintiffs failed to state a cause of action under subdivision (a)(2), however, because "the body of the e-mails was sufficient to enable the recipient to identify . . . the sender." (*Rosolowski, supra*, 230 Cal.App.4th at p. 1416.) As the court explained, "The e-mails were advertisements for [the defendant's] various consumer brands. The e-mails provided a hyperlink to [the defendant's] website, and provided an unsubscribe notice as well as a physical address." (*Ibid.*) Thus, the plaintiffs could not "plausibly allege that [the defendant] attempted to conceal its identity, as the clear purpose of e-mails was to drive traffic to [the defendant's] Web site." (*Ibid.*) The court held that "a header line in a commercial e-mail advertisement does not misrepresent the identity of the sender merely because it does not identify the official name of the entity which sent the e-mail, or merely because it does not identify an entity whose domain name is traceable from an online database, provided the sender's identity is readily ascertainable from the body of the e-mail." (*Id.* at p. 1407.)

14

2. Analysis

With these cases in mind, we consider the recipients' allegations here. We begin by agreeing with DMS that the recipients cannot state a cause of action under subdivision (a)(2) based on the allegations that the emails' from names consisted of generic phrases like "Vehicle Service Plan" or "Vehicle Protection Info." The recipients contend that these generic phrases "misrepresent *who*[*m*] the spams are from." But similar to the domain names in *Kleffman*, which also failed to "make clear the identity of either the sender or the merchant-advertiser on whose behalf the e-mail advertisement is sent," such phrases "do[] not make any 'representation' regarding the e-mail's source, either express or implied, within the common understanding of that term, so [they] cannot be said to constitute 'misrepresented' information within the meaning of [subdivision (a)(2)]." (*Kleffman, supra*, 49 Cal.4th at pp. 345–346.) Moreover, as in *Kleffman*, "a contrary conclusion would raise significant preemption problems," given federal authority holding that the CAN-SPAM Act preempts "a state law requiring an e-mail's 'from' field to include the name of the person or entity who actually sent the e-mail or who hired the sender." (*Kleffman*, at p. 346, citing *Gordon v. Virtumundo, Inc.* (9th Cir. 2009) 575 F.3d 1040, 1064.)

We come to a different conclusion, however, as to the allegations regarding the domain names. Similar to the facts established in *Balsam*, the recipients' allegations here are that the domain names neither disclosed the senders' identities nor provided sufficient information to trace those identities. The circumstances in *Rosolowski* were different because the sender there was also the actual advertiser, and its identity was disclosed in the body of the email. In contrast, nothing here made the "sender's identity . . . readily ascertainable from the body of the e-mail[s]." (*Rosolowski, supra*,

15

230 Cal.App.4th at p. 1407.) Thus, even assuming, without deciding, that *Rosolowski* correctly held that information in the body of an email may "cure" header information that would otherwise violate subdivision (a)(2), we conclude that principle does not apply here because nothing in the body of the emails made the identities of DMS's marketing partners readily ascertainable.

We recognize that, as we stated above, a domain name is not required to explicitly state the name of the sender, and any state law so requiring would likely be preempted. (*Kleffman, supra,* 49 Cal.4th at pp. 345–346.) But while "an e-mail with an accurate *and traceable* domain name makes no affirmative representation or statement of fact that is false, an e-mail with a made-up *and untraceable* domain name affirmatively *and falsely* represents the sender has no connection to [the actual sender]." (*Balsam, supra*, 203 Cal.App.4th at p. 1098.) The complaint here alleges that the domain names were essentially made-up and untraceable, and the materiality of such representations is not appropriate to resolve on demurrer. (See *Kwikset Corp. v. Superior Court, supra*, 51 Cal.4th at pp. 332–333.) Particularly given *Balsam*'s discussion of the issue (see *Balsam*, at pp. 1098–1099), we cannot conclude as a matter of law that reasonable spam recipients would attach no importance to knowing or being able to trace the identity of the senders.

The main difference between *Balsam* and this case is the nature of the defendants. As we have said, in *Balsam* the defendant was not the advertiser but a third party that sent email on the advertiser's behalf, and it was sued for failing to identify *itself* sufficiently. Here, in contrast, DMS is the advertiser, and it is being sued for third-party senders' failure to identify *themselves* sufficiently. But as DMS acknowledges, "[s]ection 17529.5 is

16

specifically aimed at advertisers so that advertisers can be held liable for abuses perpetrated by their marketing agents." (See *Hypertouch, Inc. v. ValueClick, Inc.* (2011) 192 Cal.App.4th 805, 820 ["by its plain terms, the statute is not limited to entities that actually send or initiate a deceptive commercial e-mail, but applies more broadly to any entity that advertises in those e-mails"]; see also *Rosolowski*, *supra*, 230 Cal.App.4th at p. 1411.) We have already rejected DMS's claim that it is immune from liability based on the emails' domain names so long as *it* is identified in the body of an email, and we perceive no other reason it should not be responsible for its marketing partners' misrepresentation of their own identities. We observe that section 17500—a provision of the Unfair Competition Law that is similar to subdivision (a)(2)—" 'incorporates the concept of principal-agent liability,' " meaning that "persons can be found liable for misleading advertising and unfair business practices under normal agency theory." (*People v. JTH Tax, Inc.* (2013) 212 Cal.App.4th 1219, 1242.) "The existence of an agency relationship is usually a question of fact" (*Violette v. Shoup* (1993) 16 Cal.App.4th 611, 619), and here, the recipients have alleged that DMS had a contractual relationship with at least some of the marketing partners who sent the emails.[8] Given these circumstances, we conclude that the recipients

---

[8] The complaint alleged that the marketing partners—which have never appeared in this action—are independently liable under subdivision (a)(2) "on the basis of civil conspiracy." In contrast, DMS suggests that only an advertiser, but not "a third-party marketing agent," can be liable under subdivision (a)(2). We need not and do not resolve the issue here, but we note that there is conflicting authority on whether spam recipients can state a claim under subdivision (a)(2) against entities that send spam but are not the actual advertisers. California appellate cases have held or assumed they can. (E.g., *Balsam, supra,* 203 Cal.App.4th at p. 1101; *Hypertouch, Inc. v. ValueClick, Inc.*, *supra*, 192 Cal.App.4th at p. 820.) At least one federal district court has held they cannot. (*Blanchard v. Fluent,*

17

are not precluded as a matter of law from stating a cause of action against DMS under subdivision (a)(2) based on the domain-name allegations. Accordingly, the trial court incorrectly sustained the demurrer as to these allegations.

## III.
### DISPOSITION

The trial court's demurrer rulings are reversed in part and affirmed in part. We reverse the ruling that the recipients did not state a claim under section 17529.5, subdivision (a)(2), based on the domain-name allegations, but we affirm the balance of the order sustaining the demurrer. The judgment of dismissal is reversed, and the matter is remanded for further proceedings consistent with this opinion.

---

*Inc.* (N.D. Cal. Sept. 22, 2017, No. 17-cv-04497-MMC) 2017 WL 4224768, at *2–3; see *Bank v. Hydra Group LLC* (E.D.N.Y. Mar. 31, 2019, No. 10 Civ. 1770 (VMS)) 2019 WL 1434081, at *10 [addressing liability under subdivision (a)(3)].)

_____

Humes, P.J.


WE CONCUR:


_____

Margulies, J.


_____

Sanchez, J.


*Greenberg et al. v. Digital Media Solutions, LLC* A158854

19

Trial Court:

Superior Court of the City and County of San Francisco


Trial Judge:

Hon. Ethan P. Schulman


Counsel for Plaintiffs and Appellants:

Daniel Balsam, The Law Offices of Daniel Balsam; Jacob Harker, Law Offices of Jacob Harker; Douglas A. Applegate, Pacific Legal Group, PC


Counsel for Defendants and Respondents:

Jay Ramsey, Sheppard, Mullin, Richter & Hampton LLP; Neil Asnen, Klein Moynihan Turco LLP


*Greenberg et al. v. Digital Media Solutions, LLC*  A158854