Filed 3/11/15  Basgall v. Federal Nat. Mortgage Assn. CA2/7

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

### IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### SECOND APPELLATE DISTRICT

### DIVISION SEVEN

| | |
|---|---|
| WAYNE BASGALL et al.,<br><br>    Plaintiffs and Appellants,<br><br>    v.<br><br>FEDERAL NATIONAL MORTGAGE ASSOCIATION et al.,<br><br>    Defendants and Respondents. | B251339<br><br>(Los Angeles County<br>Super. Ct. No. NCO57997) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Ross M. Klein, Judge.  Affirmed.

Law Office of Bruce J. Guttman and Bruce J. Guttman for Plaintiffs and Appellants.

Keesal, Young & Logan, David D. Piper and Bryan A. Gless for Defendants and Respondents.

————————————————

# INTRODUCTION

Wayne and Patricia Basgall (collectively the Basgalls) appeal from a judgment of dismissal entered after the trial court sustained without leave to amend the demurrer jointly filed by Federal National Mortgage Association (Fannie Mae) and JP Morgan Chase Bank, N.A. (Chase). The Basgalls' property was sold at a nonjudicial foreclosure sale by the trustee designated by Chase to purchaser Fannie Mae. The Basgalls claim the sale was invalid due to "procedural irregularities" in the notice of default and deed of sale conveyed to Fannie Mae. The Basgalls in their first amended complaint (FAC) assert causes of action for quiet title, fraud, slander of title, and to remove cloud on the title. The trial court sustained the demurrer on multiple grounds, including that the Basgalls failed to tender the amount they owed Chase on their mortgage, failed to show any prejudice from the alleged irregularities, and failed to allege specific facts to support their fraud and slander of title claims.

The Basgalls do not dispute that they failed to pay the $8,406.93 they owed on their mortgage as of the date the notice of default was recorded on November 3, 2010 and do not contend that they have paid that amount at any time since the notice was filed. Neither do they argue that Chase did not have the right to foreclose on the property as a result of their default under the deed of trust they signed in 2004. Instead, they maintain that because of the asserted procedural irregularities in the documents leading to the foreclosure, they now have a right to have their property returned to them. We find that given the Basgalls' undisputed default on their mortgage, they cannot avoid the consequences of foreclosure and sale of the property based on alleged irregularities in the foreclosure documents. We affirm.

# FACTUAL AND PROCEDURAL BACKGROUND[1]

## A. *Foreclosure Proceedings on the Basgalls' Property*

The Basgalls owned property located at 2010 Josie Avenue in Long Beach pursuant to a grant deed recorded on January 12, 1999. In August 2004 the Basgalls obtained a loan of $333,700 from Washington Mutual Bank (Washington Mutual), secured by a promissory note and deed of trust on the property. The deed of trust named California Reconveyance Company as the trustee. Paragraph 20 of the deed of trust provides that it and the promissory note could be sold without notice to the borrower and that "[a] sale might result in a change in the entity (known as the 'Loan Servicer') that collects Periodic Payments due under the Note . . . ." Paragraph 22 of the deed of trust provides that upon a default by the Basgalls, the lender can sell the property, after providing notice of the default. The deed of trust provides further in paragraph 24 that the lender may "appoint a successor trustee . . . by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located."

As of September 25, 2008, Washington Mutual ceased to exist and Chase became the new loan servicer. The FAC alleges that "[o]n or about September 25, 2008 CHASE took over all of the loan servicing rights of Washington Mutual including the above referenced loan, except for the assumption of the loan, and from that day forward Washington Mutual ceased to exist." While the Basgalls allege that Washington Mutual was "the last known valid lender of the property," Fannie Mae and Chase in their request for judicial notice filed in support of their demurrer requested that the trial court take judicial notice of a "Purchase and Assumption Agreement," under which Chase purchased all of the assets formerly held by Washington Mutual. Under the agreement, the Receiver (Federal Deposit Insurance Company) agreed to assign and transfer to Chase

---

[1] We set forth the facts as alleged in the FAC or contained in exhibits attached to the FAC, unless otherwise indicated.

all of the deeds and mortgages or other records of title pertaining to real estate mortgages.[2]

On November 3, 2010 Quality Loan Service Corporation (Quality) recorded a "Notice of Default and Election to Sell Under Deed of Trust," which states that the Basgalls were in default as of November 1, 2010 and owed $8,406.93. The notice of default identifies Quality as "either the original trustee, the duly appointed substituted trustee, or acting as agent for the trustee or beneficiary" under the deed of trust. Quality's representative signed the notice of default "[a]s agent for Beneficiary [Chase]." The notice makes clear the foreclosure was on behalf of Chase, stating "[t]o find out the amount you must pay, or arrange for payment to stop the foreclosure . . . , contact: [¶] JPMorgan Chase Bank, National Association . . . ."

Chase recorded a substitution of trustee on December 15, 2010, naming Quality as trustee in place of California Reconveyance Company. The Basgalls allege that "[t]he purported signature of Igor Borovnica [signatory for Chase] to said Substitution of Trustee is not his genuine [signature], but a forgery" and that "[t]he purported signature of the notary to said Substitution of Trustee, Deborah McNulty is not her genuine signature, but a forgery." Chase asserts that this document effectively substituted Quality as the trustee and disputes that the signature of Igor Borovnica on behalf of Chase was a forgery or that he lacked authority. Further, while the Basgalls allege that the notary's signature is a forgery, the document contains the notary stamp of Deborah A. McNulty.

---

[2]    In their opposition to the demurrer, the Basgalls did not oppose the request for judicial notice. While the trial court did not address the request in its written ruling on the demurrer, given the lack of opposition and the court's ruling that there was no showing that the deed of trust transferred to Fannie Mae was void or voidable, this court will assume the request was granted because all the documents at issue here starting in 2010 list Chase as the lender. Further, the Basgalls on appeal do not argue that Chase had no power to sell the property once it was in default, but rather, that there were procedural irregularities in the notice of default and assignment of the deed of trust to Fannie Mae.

Quality recorded a "Notice of Trustee's Sale" on February 28, 2011, as the trustee for Chase. The Basgalls allege that Quality did not have authority to hold the sale because the substitution of trustee designating Quality as trustee was not valid. According to the notice of sale, the sale was initially set for March 28. The unpaid balance and other charges at that time totaled $344,538.21.

Fannie Mae purchased the Josie Avenue property at a trustee's sale on October 24, 2011 for $355,223.64, the amount of the debt plus costs. Chase executed an assignment of the deed of trust to Fannie Mae on August 15, 2011 and recorded an "Assignment of Deed of Trust" to Fannie Mae on October 28, 2011. The Basgalls allege that the assignment of deed of trust was executed "by an unauthorized entity without legal capacity to execute said document" and is not notarized. While the assignment of deed of trust attached as Exhibit E to the FAC is not notarized and the signature is difficult to read, the document purports to be signed on behalf of Chase.

On October 28, 2011 a "Trustee's Deed Upon Sale" was recorded by Quality, as trustee, signed by "Janice Treanor, Assistant Vice President" of Quality, and purportedly notarized by "B. Perez." The document purports to convey title to the Josie Avenue property to Fannie Mae. The Basgalls allege that the signatures on the deed upon sale were forgeries.[3]

### B. *The First Amended Complaint and Demurrer*

The Basgalls filed this action on August 9, 2012 and their FAC on March 1, 2013.[4] They allege four causes of action, including for quiet title (first), fraud (second), slander of title (third), and removal of cloud on title (fourth). In their FAC, the Basgalls

---

[3]　The FAC alleges that the "Deed contained the purported notarized signature of B Perez which was not the genuine signature of B. Perez, but a forgery." We will assume for purposes of this demurrer that the Basgalls intended to allege that both the signatures of Janice Treanor on behalf of Quality and notary B. Perez were forgeries.

[4]　The Basgalls did not include the original complaint in their record on appeal.

allege that the "Substitution of Trustee" appointing Quality as trustee was void because the signatures on it were forged and that the "Assignment of Deed of Trust" was void because it also had forged signatures. The Basgalls allege that because Quality was not therefore properly designated as trustee, it had no authority to convey title in the Josie Avenue property to Fannie Mae. Based on these procedural defects, the Basgalls seek damages, to cancel the "Trustee's Deed Upon Sale" recorded on October 28, 2011, and to reinstate the Basgalls as owners of the Josie Avenue property.[5]

Fannie Mae and Chase demurred to all causes of action. The trial court sustained the demurrer without leave to amend. First, it found the Basgalls had failed to tender the debt owed under the promissory note to show that an exception to the tender rule applied. The court also rejected the Basgalls' argument that ownership of the promissory note was necessary for foreclosure. Next, the trial court found that the Basgalls failed to allege prejudice, holding that "[f]oreclosure sales are presumptively correct unless procedural irregularities result in a substantial defect prejudicing the trustor," and the Basgalls "fail[ed] to show that they were prejudiced by the alleged irregularities in the Notice of Default such that they could not make payments on their loans."

As to the second cause of action for fraud, the court held the FAC did not allege with particularity "the specific facts that would substantiate the fraud claims." As to the third cause of action for slander of title, the court found that the Basgalls "have not alleged any facts to show what unjust or untrue publication was made to Quality that slandered [the Basgalls'] title." As to the fourth cause of action for removal of cloud on title, the court found it was duplicative of the quiet title cause of action and also barred by the tender rule.

---

[5] While the FAC does not allege whether the Basgalls were evicted from the Property, we assume they lost possession because the FAC's prayer for relief requests "reinstatement of title in plaintiffs' names and for possession of said premises."

6

The court denied leave to amend, finding that the Basgalls "did not provide any basis for the court to grant them leave to amend or state how they would further amend the complaint to state a cause of action if granted leave to amend."

## DISCUSSION

### A. *Standard of Review*

"In determining whether plaintiffs properly stated a claim for relief, our standard of review is clear: '"We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. [Citation.] We also consider matters which may be judicially noticed." [Citation.] Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. [Citation.] When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action. [Citation.] And when it is sustained without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm. [Citations.] The burden of proving such reasonable possibility is squarely on the plaintiff.' [Citations.]" (*Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1126; accord, *City of Dinuba v. County of Tulare* (2007) 41 Cal.4th 859, 865.)

Our review of the complaint is de novo. (*Rosolowski v. Guthy-Renker LLC* (2014) 230 Cal.App.4th 1403, 1410; *Erlach v. Sierra Asset Servicing, LLC* (2014) 226 Cal.App.4th 1281, 1291.) The question before us is whether the complaint states a cause of action as a matter of law, and "[w]e are not concerned with plaintiff[s'] ability to prove the allegations or with any possible difficulties in making such proof." (*Erlach*, *supra*, at p. 1291.)

**B.  *The Trial Court Properly Sustained the Demurrer to the Quiet Title and Removal of Cloud on Title Causes of Action Because the Basgalls Failed To Comply with the Tender Rule***

The tender rule provides that because an action to set aside a trustee's sale is one in equity, "a defaulted borrower who seeks to set aside a trustee's sale is required to do equity before the court will exercise its equitable powers.  [Citation.]  Consequently, as a condition precedent to an action by the borrower to set aside the trustee's sale on the ground that the sale is voidable because of irregularities in the sale notice or procedure, the borrower must offer to pay the full amount of the debt for which the property was security.  [Citations.]"  (*Lona v. Citibank, N.A.* (2011) 202 Cal.App.4th 89, 112; accord, *Humboldt Sav. Bank v. McCleverty* (1911) 161 Cal. 285, 290-291.)

As the Sixth District held in *Lona*, there are four recognized exceptions to the tender rule:  "First, if the borrower's action attacks the validity of the underlying debt, a tender is not required since it would constitute an affirmation of the debt.  [Citations.]  [¶]  Second, a tender will not be required when the person who seeks to set aside the trustee's sale has a counterclaim or setoff against the beneficiary.  In such cases, it is deemed that the tender and the counterclaim offset one another, and if the offset is equal to or greater than the amount due, a tender is not required.  [Citation.]  [¶]  Third, a tender may not be required where it would be inequitable to impose such a condition on the party challenging the sale.  [Citation.]  . . .  [¶]  Fourth, no tender will be required when the trustor is not required to rely on equity to attack the deed because the trustee's deed is void on its face.  [Citation.]"  (*Lona v. Citibank, N.A.*, *supra*, 202 Cal.App.4th at pp. 112-113; accord, *Humboldt Sav. Bank v. McCleverty*, *supra*, 161 Cal. at pp. 290-291.)

The Basgalls allege that the tender rule does not apply because the sale of the Josie Avenue property is void due to procedural irregularities and because it would be inequitable to require them to tender the amount owed on their debt.  We find both arguments without merit.

8

1. *The Basgalls cannot avoid tender based on procedural irregularities in the foreclosure.*

The Basgalls assert that they were not required to tender their indebtedness because the sale of the Josie Avenue property was void as a result of the "irregularities in the proceedings and the forged deeds,"[6] citing to *Lona v. Citibank, N.A.*, *supra*, 202 Cal.App.4th at page 113, and *Dimock v. Emerald Properties* (2000) 81 Cal.App.4th 868, 878. However, this exception to the tender rule only applies where the deed is void on its face, not where a deed is only "voidable," because equitable relief is not required to set aside a void deed. (*Dimock*, *supra*, at pp. 877-878; accord, *Lona*, *supra*, at p. 113 [exception to the tender rule only applies where "the trustee's deed is void on its face"].)[7]

As the court held in *Dimock*: "[I]n the context of overcoming a voidable sale, the debtor must tender any amounts due under the deed of trust. [Citations.] *This requirement is based on the theory that one who is relying upon equity in overcoming a voidable sale must show that he is able to perform his obligations under the contract so that equity will not have been employed for an idle purpose.* [Citation.]" (*Dimock v. Emerald Properties*, *supra*, 81 Cal.App.4th at pp. 877-878.)

In *Dimock*, the court found that the deed was void on its face because it was undisputed that the bank had recorded a document that substituted Calmco as trustee

---

6    Although the Basgalls allege the sale was "void," as we discuss above, on a demurrer a court is not required to accept as true the complaint's contentions, deductions or conclusions of fact or law. (*Zelig v. County of Los Angeles*, *supra*, 27 Cal.4th at p. 1126; *Rosolowski v. Guthy-Renker LLC*, *supra*, 230 Cal.App.4th at p. 1410.)

7    This district in *Little v. CFS Service Corp*. (1987) 188 Cal.App.3d 1354, 1359 discussed the differences between a void and voidable deed, holding that where there is defective notice of a sale of property and the deed on its face does not contain language stating there is a conclusive presumption that the sale was properly noticed, the deed is "void." Here, the deed of trust provides in paragraph 22 that "[t]he recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein." The "Trustee's Deed Upon Sale" provides that the trustee has "complied with all applicable statutory requirements," including all requirements regarding notice. As we discuss below, the foreclosure documents are not void on their face.

9

under the deed of trust in place of former trustee Commonwealth, and given this recording, only Calmco had the power to conduct a trustee's sale of the property. (*Dimock v. Emerald Properties*, *supra*, 81 Cal.App.4th at p. 874.) Therefore, the deed executed by Commonwealth purporting to convey the property was void on its face, and Dimock "could rely on the face of the record to show that the Commonwealth deed was void." (*Id*. at p. 878.) The court held that where a deed is not void on its face, "a trustor then bears the burden of showing that there are grounds for equitable relief from the deed, such as fraud or that the buyer was not a bona fide purchaser for value, and that there were also defects in notice." (*Id*. at p. 877.)

This is precisely such a case of an allegedly "voidable" deed. The Basgalls do not dispute that Chase held a valid trust deed on the Josie Avenue property. The challenged "Substitution of Trustee" properly recorded on December 15, 2010 appears to be signed by a representative of Chase and carries the stamp of the notary. The Basgalls allege that this document is forged, but this is not evident on the face of the document.

The "Notice of Default" similarly appears valid on its face. The Basgalls contend that the notice was defective because it was filed by Quality on November 3, 2010, before Chase recorded the substitution of Quality as trustee. Notably, this is at most a procedural defect because the substitution of trustee was filed on December 15, 2010, prior to the notice of trustee's sale recorded on February 28, 2011 and the sale on August 15, 2011. Further, in the notice of default, Quality is listed as the "agent" of Chase. The Basgalls have not alleged that Quality did not act as the agent of Chase.

The same argument made by the Basgalls—that the notice of default is invalid because it was filed before designation of Quality as trustee—has been rejected by this district and the Fourth District. (See *Siliga v. Mortgage Electronic Registration Systems, Inc.* (2013) 219 Cal.App.4th 75, 85; *Jenkins v. JPMorgan Chase Bank, N.A.* (2013) 216 Cal.App.4th 497, 515-516 (*Jenkins*).) In each case, Chase substituted Quality as its trustee after recording the notice of default, but both courts found the notice to be valid because, as here, Quality signed the notice as the "agent" of Chase. In *Siliga*, for example, this district held: "The notice of default stated that [Quality] recorded the

10

notice of default not as trustee but as agent for the beneficiary. This was proper, and the Siligas have shown no error in this regard." (*Siliga*, *supra*, at p. 85.) Further, as the courts noted, Civil Code section 2924, subdivision (a)(1), provides that a "trustee, mortgagee, or beneficiary, or any of their authorized agents" may initiate the nonjudicial foreclosure process.

Likewise here, the challenged "Trustee's Deed upon Sale" was properly recorded and on its face shows that Quality, as trustee for Chase, conveyed title in the property to the purchaser Fannie Mae. The Basgalls contend that the signatures on this document are forgeries, not that the document is void on its face.

Finally, assuming Quality was acting as the agent and/or trustee for Chase in following the foreclosure procedures, the "Trustee's Deed Upon Sale" under which Quality conveyed title in the Josie Avenue property after the sale to Fannie Mae was valid. The Basgalls' argument that the deed was void because the signature by Quality's Assistant Vice President Janice Treanor and notary signature were forged goes to whether the deed is voidable, not void, given that the document purports to bear the signature of Quality's representative and bears the signature and stamp of the notary.[8]

The Basgalls' reliance on *Fleming v. Kagan* (1961) 189 Cal.App.2d 791 is misplaced. In *Fleming*, the holder of the promissory notes and deed of trust committed fraud on the borrower by obtaining the borrower's signature on papers he said were requests for permits, when in fact they were a promissory note and deed of trust. (*Id*. at pp. 794-795.) In light of this fraud, the note and deed were void. (*Id*. at p. 796.) There are no similar allegations of fraud here in obtaining the deed of trust—the Basgalls do not

---

[8]     The holding in *Glaski v. Bank of America* (2013) 218 Cal.App.4th 1079, 1100, cited by the Basgalls, is distinguishable. In *Glaski*, the court held that under New York law, allegations that the bank attempted to transfer a deed of trust into a securitized trust after the closing date for formation of the trust made the sale void, not voidable. (*Id*. at pp. 1084, 1097.) Because the court found that Glaski had properly alleged that the deed was void, the court did not reach Glaski's alternative theory that the foreclosure was void because it was implemented by forged documents. (*Id*. at p. 1097, fn. 16.)

11

dispute that they owed over $300,000 on their loan and that they were in default on their payments.

The Basgalls also argue that the sale was void because the property could not be sold to Fannie Mae without assignment of the note secured by the trust deed, relying on an 1873 United States Supreme Court case, *Carpenter v. Longan* (1873) 83 U.S. 271, 274 [21 L.Ed. 313], and *In re Veal* (B.A.P. 9th Cir. 2011) 450 B.R. 897, 915-916, both of which interpreted common law principles, not California's nonjudicial foreclosure law.[9] As the court held in *Veal*, "under the common law generally, the transfer of a mortgage without the transfer of the obligation it secures renders the mortgage ineffective and unenforceable in the hands of the transferee. [Citation.]" (*In re Veal*, *supra*, 450 B.R. at pp. 915-916, fn. omitted.)

By contrast, courts interpreting California's nonjudicial foreclosure statute at issue here have reached the opposite conclusion, that "'the statute does not require a beneficial interest in both the Note and the Deed of Trust to commence a non-judicial foreclosure sale.' [Citation.]" (*Debrunner v. Deutsche Bank National Trust Co.* (2012) 204 Cal.App.4th 433, 441 (*Debrunner*); accord, *Jenkins*, *supra*, 216 Cal.App.4th at p. 512.) Both the Sixth District in *Debrunner* and the Fourth District in *Jenkins* relied on Civil Code section 2924, subdivision (a)(1), which permits a notice of default to be filed by the "trustee, mortgagee, or beneficiary, or any of their authorized agents," as supporting a finding that the entity commencing and executing the foreclosure sale does not need physical possession of the underlying promissory note. (*Debrunner*, *supra*, at pp. 440-442; *Jenkins*, *supra*, at p. 513.) As the court held in *Jenkins*: "[W]e find the statutory

---

9       The Basgalls also cite to *Cockerell v. Title Ins. & Trust Co.* (1954) 42 Cal.2d 284, which involved a dispute between holders of a second, third and fourth deed of trust on property sold at a foreclosure sale on the second deed of trust in which the sale yielded a surplus. Similarly, they rely on *Domarad v. Fisher & Burke, Inc.* (1969) 270 Cal.App.2d 543, which involved a dispute over possession of multiple notes secured by deeds of trust. Neither *Cockerell* nor *Domarad* addressed the issue here of whether an agent or trustee can initiate and execute a foreclosure under California's nonjudicial foreclosure law on behalf of the lender without possession of the note.

12

provisions . . . ([Civ. Code,] § 2924, subd. (a)(1) . . .) do not require that the foreclosing party have an actual beneficial interest in both the promissory note and deed of trust to commence and execute a nonjudicial foreclosure sale."[10] (*Jenkins*, *supra*, at p. 513.)

   2. *It would not be inequitable to require the Basgalls to tender payment*
      *on the debt.*

Tender is not required where it would be inequitable to require payment of the debt before filing suit. (*Humboldt Sav. Bank v. McCleverty*, *supra*, 161 Cal. at p. 291 [finding it would be inequitable to require debtor to tender payment for debt for which she was not liable]; *Lona v. Citibank, N.A.*, *supra*, 202 Cal.App.4th at pp. 97, 111 [inequitable to require debtor to tender debt on unconscionable loan where debtor had limited English skills, an eighth grade education, did not understand what he was signing, and had agreed to two loans totaling $1.5 million although his salary was only $40,000 per year].)

Other courts have similarly found that a debtor is not required to tender the debt where the lawsuit is based on the lender's violation of foreclosure laws, including the requirement that the lender discuss the borrower's financial situation before filing a notice of default (see *Mabry v. Superior Court* (2010) 185 Cal.App.4th 208, 213-214) or failure of the lender to comply with Department of Housing and Urban Development requirement that the lender have a face-to-face meeting with the borrower to discuss alternatives to foreclosure prior to the foreclosure sale (see *Pfeifer v. Countrywide Home*

---

[10]    The court in *Debrunner* addressed the decision in *Veal*, noting that the bankruptcy court there interpreted the Uniform Commercial Code and Illinois law, which are different from the California nonjudicial foreclosure statute, and pointing out that the court in *Veal* specifically cites to Civil Code section 2924 and cases arising in California as a departure from the common law rule that assignment of the deed without the note is a nullity. (See *Debrunner*, *supra*, 204 Cal.App.4th at p. 442; *In re Veal*, *supra*, 450 B.R. at pp. 916-917 & fn. 34 ["we are aware that some states may have altered this rule by statute," citing to Civ. Code, § 2924].)

13

*Loans, Inc.* (2012) 211 Cal.App.4th 1250, 1280; *Fonteno v. Wells Fargo Bank, N.A.* (2014) 228 Cal.App.4th 1358, 1374).

As the court held in *Mabry*, "the whole point of [Civil Code] section 2923.5 [requiring the lender to contact the borrower before recording a notice of default] is to create a new, even if limited, right to be contacted about the possibility of *alternatives* to full payment of arrearages.  It would be contradictory to thwart the very operation of the statute if enforcement were predicated on full tender." (*Mabry v. Superior Court*, *supra*, 185 Cal.App.4th at pp. 225.)

The Basgalls also rely on *Onofrio v. Rice* (1997) 55 Cal.App.4th 413, in which the court found that it would be inequitable to require tender of the debt where the person who purchased plaintiff's property at the foreclosure sale was plaintiff's own foreclosure consultant who fraudulently represented that he would assist plaintiff in avoiding foreclosure.  (*Id*. at pp. 417, 424.)  The court held that "'if the action attacks the validity of the underlying debt, a tender is not required since it would constitute an affirmative of the debt.'" (*Id*. at p. 424.)  Here, the Basgalls do not attack the validity of the underlying debt to Chase.

The Basgalls point to nothing in the instant case that would make it inequitable to require them to tender full payment of their debt prior to bringing this lawsuit to challenge the foreclosure proceedings.  Indeed, it is hard to imagine why, in a case where Chase foreclosed on a property due to the borrowers' default, it would be inequitable to require the debtors to tender the amount owed on the debt where the only challenged irregularities relate to documents designating the trustee to effectuate the foreclosure.  The Basgalls do not dispute that they are in default under the promissory note or allege that Chase would have refrained from foreclosure if a different trustee carried out the foreclosure.  Therefore, no exception to the tender rule applies, and the trial court

14

properly sustained the demurrer as to the causes of action to quiet title and to remove a cloud on the title.[11]

## C. *The Basgalls Have Not Pleaded a Claim for Fraud*

"'[T]he elements of an action for fraud . . . based on concealment are: (1) the defendant must have concealed or suppressed a material fact, (2) the defendant must have

---

[11] Chase and Fannie Mae also argue that the Basgalls lack standing to argue procedural irregularities from the sale because they cannot allege they were prejudiced. Many cases in a similar factual posture have held that where the borrower does not dispute that it is in default on a note, it cannot show prejudice from alleged imperfections in the assignment of trustee or notice of default. (See, e.g., *Siliga v. Mortgage Electronic Registration Systems, Inc.*, *supra*, 219 Cal.App.4th at p. 85 [court rejected the borrowers' challenge to a nonjudicial foreclosure sale based on a lack of authority to assign the deed of trust and record a notice of default where no showing of prejudice to borrower]; *Jenkins*, *supra*, 216 Cal.App.4th at pp. 514-515 [assignment of promissory note only substituted one creditor for another, and plaintiff lacked standing as unrelated third party to transfers of beneficial interest in note]; *Herrera v. Federal National Mortgage Assn.* (2012) 205 Cal.App.4th 1495, 1507 [borrower suffered no prejudice from alleged defect in assignment to trustee who executed sale, holding "[a]s to plaintiff, an assignment merely substituted one creditor for another, without changing her obligations under the note"].)

As this district held in *Siliga*: "The assignment of the deed of trust and the note did not change the Siligas' obligations under the note, and there is no reason to believe that Accredited as the original lender would have refrained from foreclosure in these circumstances. Absent any prejudice, the Siligas have no standing to complain about any alleged lack of authority or defective assignment. [Citation.]" (*Siliga v. Mortgage Electronic Registration Systems, Inc.*, *supra*, 219 Cal.App.4th at p. 85.)

However, after the filing of briefs by the parties in this appeal, our Supreme Court granted review in two cases addressing this standing issue, specifically, on the question, "[i]n an action for wrongful foreclosure on a deed of trust securing a home loan, does the borrower have standing to challenge an assignment of the note and deed of trust on the basis of defects allegedly rendering the assignment void?" (*Yvanova v. New Century Mortgage Corp.*, review granted Aug. 27, 2014, S218973 [176 Cal.Rptr.3d 266, 331 P.3d 1275]; *Keshtgar v. U.S. Bank, N.A.*, review granted Oct. 1, 2014, S220012 [178 Cal.Rptr.3d 320, 334 P.3d 686]. Because we conclude the trial court properly sustained the demurrer on other grounds, we need not address the standing issue. (*Jenkins*, *supra*, 216 Cal.App.4th at p. 535; *Excelsior College v. Board of Registered Nursing* (2006) 136 Cal.App.4th 1218, 1237, fn. 3.)

been under a duty to disclose the fact to the plaintiff, (3) the defendant must have intentionally concealed or suppressed the fact with the intent to defraud the plaintiff, (4) the plaintiff must have been unaware of the fact and would not have acted as he did if he had known of the concealed or suppressed fact, and (5) as a result of the concealment or suppression of the fact, the plaintiff must have sustained damage. [Citation.]' [Citation.]" (*Hasso v. Hapke* (2014) 227 Cal.App.4th 107, 127; accord, *Robinson Helicopter Co., Inc. v. Dana Corp.* (2004) 34 Cal.4th 979, 990.)

Further, "[f]raud allegations '"involve a serious attack on character"' and therefore are pleaded with specificity. [Citation.] General and conclusory allegations are insufficient. [Citation.]" (*Cansino v. Bank of America* (2014) 224 Cal.App.4th 1462, 1469; accord, *Rossberg v. Bank of America, N.A.* (2013) 219 Cal.App.4th 1481, 1498.) In particular, "'"[a] plaintiff asserting fraud by misrepresentation [or concealment] is obliged to . . . '"establish a complete causal relationship" between the alleged misrepresentations and the harm claimed to have resulted therefrom.'" [Citation.]' [Citation.]" (*Rossberg*, *supra*, at p. 1499; see also *Kwikset Corp. v. Superior Court* (2011) 51 Cal.4th 310, 326 [plaintiff must show "'actual reliance'" on the alleged misrepresentation].) If the alleged damages would have resulted even in the absence of the fraud, "'causation *cannot* be alleged and a fraud cause of action cannot be sustained.'" (*Rossberg*, *supra*, at p. 1499.)

The Basgalls allege that Chase and Quality knew or should have known that "the pertinent documents . . . contained forged signatures, the Assignment [of Deed of Trust] was not notarized, that Quality Loan Services, the acting trustee, was unauthorized to conduct a trustee's sale, and lacked legal capacity to convey title, [and] that said conveyance was void." They also allege that Chase and Quality acted "with intent to cause harm to [the Basgalls] by concealing the true facts, and by the initiation, and completion of foreclosure on [the Basgalls'] home . . . ."

The Basgalls do not allege how they relied on the allegedly fraudulent documents and representations to their detriment. There is no allegation that had Chase or California Reconveyance Company (the entity the Basgalls presumably believed was the

16

proper trustee) commenced the foreclosure that the sale of the property would not have happened.  Accordingly, the Basgalls have failed to plead a cause of action for fraud based on concealment.  Further, the Basgalls have not shown how they could amend their FAC to allege the elements of fraudulent concealment in light of the right of Chase to foreclose on the property.

**D.  *The Basgalls Have Failed To Allege How Their Title Was Slandered***

"The elements of a cause of action for slander of title are (1) a publication, which is (2) without privilege or justification, (3) false, and (4) causes pecuniary loss. [Citation.]" (*La Jolla Group II v. Bruce* (2012) 211 Cal.App.4th 461, 472, italics omitted; accord, *M.F. Farming Co. v. Couch Distributing Co., Inc.* (2012) 207 Cal.App.4th 180, 198.)  As *M.F. Farming Co.* held:  "'Slander of title is effected by one who without privilege publishes untrue and disparaging statements with respect to the property of another under such circumstance[s] as would lead a reasonable person to foresee that a prospective purchaser or lessee thereof might abandon his intentions. . . . Damages usually consist of loss of a prospective purchaser. . . .' [Citation.]  'However, it is not necessary to show that a particular pending deal was hampered or prevented, since recovery may be had for the depreciation in the market value of the property [citation].' [Citation.]" (*M.F. Farming Co.*, *supra*, at pp. 198-199.)

The Basgalls allege that Chase, Quality and Fannie Mae wrongfully caused the recording of the notice of default, assignment of the deed of trust, substitution of trustee, notice of trustee's sale and trustee's deed upon sale against the property.  However, they fail to allege any pecuniary loss due to loss of a seller or depreciation in the market value of the property.  Rather, their alleged injury is the actual loss of the property, not its devaluation.  Further, they have failed to set forth what additional facts they could allege to state a cause of action for slander of title.

17

**E.** *The Trial Court Did Not Abuse Its Discretion in Denying Leave To Amend*

The Basgalls contend that the defects in their FAC "amount to claimed lack of detail," and they "can supply any missing details that this Court identifies and plead additional facts that would substantiate their causes of action for fraud and slander of title." However, as we discuss below, the Basgalls have failed to meet their burden to show how they would amend their complaint to plead any cognizable claims.

To demonstrate that the trial court abused its discretion in denying leave to amend, a "'[p]laintiff must show in what manner he can amend his complaint and how that amendment will change the legal effect of his pleading. [Citation.]' [Citation.]" (*Goodman v. Kennedy* (1976) 18 Cal.3d 335, 349; accord, *Rossberg v. Bank of America, N.A.*, *supra*, 219 Cal.App.4th at p. 1491.) As the Fourth District held in *Rossberg*: "'Further, the plaintiff must set forth factual allegations that sufficiently state all required elements of that cause of action. [Citations.] Allegations must be factual and specific, not vague or conclusionary. [Citation.]' [Citation.]" (*Rossberg*, *supra*, at p. 1491.) The burden to make this showing is on the plaintiff. (*Goodman*, *supra*, at p. 349; *Rossberg*, *supra*, at p. 1491.) We next apply this standard to each cause of action.

With respect to the FAC's first cause of action to quiet title and the fourth cause of action to remove cloud on title, the Basgalls have made no showing that they can allege compliance with the tender rule. They argue in the alternative that under the recent decision in *Fonteno v. Wells Fargo Bank, N.A.*, *supra*, 228 Cal.App.4th at page 1374, they should be given an opportunity "to plead a viable claim for equitable cancellation of the trustee's sale based on allegations that the sale was not authorized by contract, even after the sale has occurred." As we have discussed, the Basgalls have not shown why it would be inequitable to require them to tender the debt they owe on their mortgage. Neither have they identified any contractual provisions that would have prevented the sale of the property or how the holding in *Fonteno* has in any way lessened their burden of compliance with the tender rule or an exception to the rule.

Similarly, the Basgalls fail to state what additional allegations they could plead to state claims for fraud or for slander of title. Specifically, they cannot show that they were

18

damaged by alleged false statements and concealment of procedural irregularities by Chase and Quality, especially in light of the simple fact that the sale of the property resulted from their own default on their loan.

We find the trial court did not abuse its discretion by sustaining the demurrer without leave to amend.

## DISPOSITION

The judgment is affirmed. Fannie Mae and Chase are awarded their costs on appeal.

FEUER, J.[*]

We concur:

PERLUSS, P. J.

ZELON, J.

---

[*] Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.